IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

HMV PROPERTIES, LLC,
*et al.,*

        Plaintiffs,

   vs.                                            Civil Action 2:08-CV-895
                                                               Judge Holschuh
                                                                Magistrate Judge King

IDC OHIO HOLDINGS, LLC,
*et al.,*

        Defendants.


**REPORT AND RECOMMENDATION**

Plaintiffs assert federal and state law claims for equitable and monetary relief, *see Amended Complaint,* Doc. No. 85, arising, *inter alia,* out of the marketing and sale by IDC Ohio Holdings, LLC [hereinafter "IDC Holdings"], and/or IDC Ohio Management, LLC [hereinafter collectively "IDC Defendants"], of four Dairy Queen properties in Ohio. On March 16, 2009, plaintiffs filed a motion for prejudgment attachment pursuant to F.R. Civ. P. 64 and O.R.C. §2715.01, relating to "real property located at 9575 Diamond Center, Mentor, Ohio." Doc. No. 56 ["*Motion for Prejudgment Attachment*"]. That motion was referred to the undersigned for an evidentiary hearing and report and recommendation. *Order*, Doc. No. 96. An evidentiary hearing was held on January 20, 2010.

Rule 64 of the Federal Rules of Civil Procedure addresses the seizure of property in connection with civil litigation:

    **(a)   Remedies Under State Law -- In General**

> ... [E]very remedy is available that, under
> the law of the state where the court is located,
> provides for seizing a person or property to secure
> satisfaction of the potential judgment. ...

F.R. Civ. P. 64(a). The rule also expressly authorizes the attachment of property. Rule 64(b).

Plaintiffs move for attachment pursuant to the provisions of O.R.C. §2715.01(A)(6)-(9). *Motion for Prejudgment Attachment,* at 3. That statute provides in pertinent part:

> Section 2715.01. Grounds of Attachment.
>
> (A) An attachment against the property, other than personal earnings, of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon any one of the following grounds:
>
>   *  *  *
>
> (6) That the defendant is about to remove property, in whole or part, out of the jurisdiction of the court, with the intent to defraud creditors;
>
> (7) That the defendant is about to convert property, in whole or part, into money, for the purpose of placing it beyond the reach of creditors;
>
> (8) That the defendant has property or rights in action, which the defendant conceals;
>
> (9) That the defendant has assigned, removed, disposed of, or is about to dispose of, property in whole or part, with the intent to defraud creditors;
> ...

O.R.C. §2715.01(A)(6)-(9).

Ohio Revised Code Chapter 2715 addresses attachment generally. Under Ohio law, a motion for prejudgment attachment must be supported by an affidavit that sets forth the nature and amount of the plaintiff's

claim, the facts supporting attachment, a description of the property sought and its approximate value, if known, the location of the property, the use to which the defendant has put the property, if known, a representation that the property is not exempt from attachment or execution, and the name of any third person possessing the property. O.R.C. §2715.03. Issuance of an order of attachment is appropriate if the court "finds, on the basis of the affidavit and, if applicable, the evidence presented at the hearing, that there is probable cause to support the motion." O.R.C. §2715.043(B).

The *Motion for Prejudgment Attachment* addresses a "Dairy Queen located at 9575 Diamond Street, Mentor, Ohio," *Id.,* at 2, currently marketed for sale at a list price of $1.9 million. *See also Affidavit of Shawn M. Blatt,* ¶4, attached to *Motion for Prejudgment Attachment* [hereinafter "*Blatt Affidavit*"].[1] Plaintiffs concede that the Dairy Queen property is titled in an entity identified as Pickett Investments I, LLC [hereinafter "Pickett"], which is not a party to this action.[2] *Motion for Prejudgment Attachment,* at 2; *Exhibits C* and *D,* attached to *Motion for Prejudgment Attachment.* The *Motion for Prejudgment Attachment* nevertheless took the position that "IDC has an ownership interest in this property. IDC attempted to conceal its ownership of this asset by conveying part of the property to [Pickett] and retaining the other half of the property." *Id.,* at 2. In this regard, plaintiffs make specific note that the deed of transfer to Pickett indicated that Pickett's

---

[1] The Dairy Queen referred to in the *Motion for Prejudgment Attachment* is not one of the properties directly at issue in the *Complaint* or *Amended Complaint.*

[2] Although Pickett is not a named party to the action, it was represented by counsel at the evidentiary hearing.

3

address, for tax mailing purposes, was the address of the IDC Defendants. *Compare Exhibit C with Exhibit D,* attached to *Motion for Prejudgment Attachment*.

At the evidentiary hearing, plaintiffs modified their request for attachment, asking that only the parcel, largely undeveloped, titled in IDC Holdings be attached. Plaintiffs no longer seek attachment of the parcel located at 9575 Diamond Street, Mentor, Ohio, which includes a Dairy Queen property.

The IDC Defendants take the position that the *Motion for Prejudgment Attachment* is deficient, that they are not owners of the Dairy Queen property originally sought to be attached by plaintiffs and that, in any event, there has been no effort to sell or convert any property owned by IDC Holdings located at the Diamond Street address in Mentor, Ohio.

The evidence presented at the evidentiary hearing established that IDC Holdings had been the title owner of a parcel of real property consisting of 1.875 acres. *Exhibit C*, attached to *Plaintiff's Reply*, Doc. No. 69. That parcel was split and the larger, developed, section of the original parcel, consisting of .982 acres, [hereinafter "Lot A"], on which the Dairy Queen business is situated, was transferred to Pickett. *See Plaintiffs' Exhibit 1.* The smaller section, consisting of .843 acres [hereinafter "Lot B"], was retained by IDC Holdings.[3] Lot B is largely undeveloped, except that it includes some parking spaces associated with the business premises on Lot A, as well as ingress and

---

[3] Defendant John A. Slack testified at the evidentiary hearing that the transaction involved an interim transfer to another entity, RPG Development, LLC, in order to comply with local zoning requirements.

egress that also serve Lot A. Defendant John A. Slack, the sole member of the IDC Defendants, testified at the evidentiary hearing that Lot A has an easement in connection with the parking spaces and entry way located on Lot B. He also specifically testified that the easement is of public record.

According to defendant John Slack, the transfer of Lot A to Pickett involved a sale and leaseback pursuant to which the IDC Defendants were to operate the Dairy Queen business and pay all expenses, including taxes, associated with the property and business. *See also Exhibit 2,* attached to *Affidavit of Norman Pickett,* [hereinafter "*Pickett Affidavit*"], Doc. No. 153. John Slack testified that the address of the IDC Defendants was reflected in the deed transferring Lot A to Pickett because, under the lease agreement, the tenant was obligated to pay the taxes during the term of the lease. That lease agreement was terminated, however, on November 26, 2008. *Exhibit 4,* attached to *Pickett Affidavit.* Since the termination of the lease agreement, neither John Slack nor the IDC Defendants have had any relationship, whether business or otherwise, with Pickett. *See also Pickett Affidavit,* ¶4.

According to John Slack, there is no current effort or intention to sell Lot B. In fact, he testified, the outstanding mortgage on the parcel and judgments against the IDC Defendants and John Slack personally greatly exceed the value of Lot B.[4] Should Lot B be sold, then, any proceeds of sale would not inure to the benefit of the IDC Defendants or John Slack. Moreover, there is no intention or effort to

---

[4] According to John Slack, Lot B is valued by appraisal at approximately $650,000. The first mortgage, in the amount of approximately $350,000, is currently in default and the outstanding judgments total almost $1 million.

remove property or proceeds from the jurisdiction, to convert property into money for the purpose of placing it beyond the reach of creditors, to conceal property held by IDC Holdings, or to dispose of property with the intent to defraud creditors.

As noted *supra,* plaintiffs no longer seek attachment of Lot A, but pursue their *Motion for Prejudgment Attachment* as it may relate to Lot B. Plaintiffs reason that, should Lot A be sold, Lot B -- which is owned by defendant IDC Ohio Holdings -- would also necessarily be sold because of the easement on that parcel, the existence of which plaintiffs do not appear to dispute. Plaintiffs therefore argue that IDC Holdings, which owns only Lot B, nevertheless has an interest in Lot A, which continues to be marketed for sale by Pickett.

Plaintiffs' argument misapprehends well-established Ohio law governing easements. As the Ohio Supreme Court held long ago:

> A way, laid out by an owner over his lands for the benefit of parcels thereof, into which he subdivided them for sale, the boundaries of which way the purchasers of the several parcels definitely establish by mutual agreement, and thereafter improve and use it for the benefit of their lands, is an easement annexed to the lands, and passes by a grant of the land without being mentioned in the conveyance. The grantee takes the rights his grantor had with respect to it, and holds his land subject to the burden it imposed.

*Shields v. Titus*, 46 Ohio St.528 (1889), syllabus 1. Thus, the mere fact that Lot A may be listed for sale and may in fact be eventually sold, does not establish that Lot B, the only parcel owned by a defendant in this action, will also necessarily be sold, nor does it create in Lot B, or its owner, any interest in Lot A.

Plaintiffs, whose burden it is to establish a right to attachment by a preponderance of the evidence, have failed to carry that

burden.  There is simply no evidence in the record that the IDC Defendants or defendant John Slack has any property interest in Lot A, the only parcel being marketed for sale.  There is no evidence that Lot B, which is titled in the name of Defendant IDC Holdings, is being marketed for sale.  There is no evidence that IDC Holdings has attempted to conceal its ownership or interest in that parcel or that the IDC Defendants or defendant John Slack are about to dispose of that parcel with the intent to defraud creditors.  Plaintiffs have therefore failed to establish grounds for attachment under O.R.C. §2715.01(A)(6)-(9).

It is therefore **RECOMMENDED** that *Plaintiffs' Motion for Prejudgment Attachment*, Doc. No. 56, be **DENIED**.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

7

January 22, 2010                         *s/Norah McCann King*
                                    Norah M^cCann King
                              United States Magistrate Judge